

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2004

# USA v. Kellum

Precedential or Non-Precedential: Precedential

Docket No. 02-4054

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Kellum" (2004). *2004 Decisions.* Paper 1043.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1043

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed January 23, 2004

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4054

UNITED STATES OF AMERICA

v.

CLAYTON KELLUM,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Crim. No. 01-cr-00399)
District Judge: Hon. Clarence C. Newcomer

Submitted pursuant to Third Circuit LAR 34.1(a)
November 3, 2003

Before: McKEE and SMITH, *Circuit Judges*,
and WEIS, *Senior Circuit Judge*

(Filed January 23, 2004)

Elizabeth T. Hey, Esq.
Defender Association of Philadelphia
Federal Court Division
Curtis Center, Independence Square
 West
Suite 540 West
Philadelphia, PA 19106

Attorney for Appellant

Sara L. Grieb, Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Attorney for Appellee

## OPINION OF THE COURT

McKEE, *Circuit Judge.*

Clayton Kellum appeals from the district court's imposition of the statutory mandatory minimum sentence under 21 U.S.C. § 841, 18 U.S.C. § 924(c) and the sentencing guidelines. For the reasons that follow we will affirm.

## I.

On January 7, 2001, a Coatesville, Pennsylvania police officer saw Kellum standing at the corner of North 8th Avenue and East Chestnut Street in Coatesville. Because the officer knew of an outstanding warrant for Kellum's arrest, the officer approached Kellum. When Kellum saw the officer approaching, he fled. The officer ran after Kellum and, during the foot pursuit, the officer saw Kellum move his hand near a pocket in the black nylon jacket Kellum was wearing. The officer then saw Kellum remove the jacket and turn the corner of 910 Merchant Street. When the officer turned the corner in pursuit he immediately saw a Tec-9 semiautomatic 9mm machine pistol laying on the ground. Kellum's jacket was approximately 10 feet from the gun, and Kellum was approximately 15 to 20 feet away, lying near a fence and wearing no jacket.

A clear plastic container with a white lid was retrieved from the right front pocket of the jacket. The container contained numerous pieces of an off-white, rock-like substance. A large, black plastic bag was recovered from the left sleeve of the jacket. The bag contained 35 smaller clear plastic baggies, with each baggie containing an off-

white, rock-like substance. The substance in the container and the bag tested positive for cocaine base, with a net weight of 202 grams.

After waiving his *Miranda* rights, Kellum admitted that the gun found on the ground was his. He said that he had purchased the gun the previous day.

## II.

A grand jury thereafter returned an indictment charging Kellum with possession with intent to distribute in excess of 50 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) (Count One), and carrying a firearm during, and in relation to, a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count Two).

Kellum pled guilty to possession of cocaine base with intent to distribute and carrying a firearm in relation to a drug trafficking offense pursuant to a written plea agreement. Under the terms of that agreement, the government agreed to recommend that the district court sentence Kellum to the mandatory minimum sentence or at the low end of the sentencing guidelines, whichever was higher. Kellum and the government further agreed that if the statutorily required minimum sentence for the drug offense of ten years was greater than the maximum applicable guideline range for the drug offense, then the appropriate sentence for the drug offense would be ten years. Kellum and the government agreed that the guidelines sentence for the firearm count was five years consecutive to the sentence that would be imposed on the drug offense.

At sentencing, pursuant to the plea agreement, the government and Kellum recommended that the district court sentence Kellum to the mandatory minimum sentence.[1] However, the district court expressed some concern about sentencing Kellum to a total of fifteen years imprisonment, and questioned the government about its refusal to file a

---

1. At the time of his sentencing, Kellum was 23 years old. He had no juvenile record and one adult state conviction for retail theft. Presentence Report ¶¶ 27, 29.

motion for a downward departure under U.S.S.G. § 5K1.1. The government responded by informing the court of the opportunities it had provided Kellum to cooperate. The government had taken several proffers from Kellum while he was represented by prior counsel. Each time Kellum apparently provided a little more information than the prior time, but the government remained convinced that Kellum was withholding information. Accordingly, the government refused to agree to file a motion for a downward departure under U.S.S.G. § 5K1.1. When Kellum obtained new counsel, the government provided Kellum with another opportunity to proffer his cooperation. However, after conducting that proffer, the government remained skeptical of Kellum's cooperation and again refused to commit to a 5K1.1 motion.

On October 21, 2002, the district court sentenced Kellum to the statutory minimum sentences — imposing a sentence of 120 months imprisonment on the drug trafficking charge and 60 months consecutive imprisonment on the firearm charge. The sentence also included a term of supervised release of five years and a special assessment of $200. This appeal followed.

## III.

Kellum correctly notes that the district court was "obviously convinced that the 15 year sentence [it] felt compelled to impose was" excessive. Kellum's Br. at 12. After hearing from the Assistant United States Attorney, the district court said: "It strikes me . . . that 15 years is an awfully long time for anyone to have to spend in prison for two offenses of that nature." The court then explained why it was imposing a 15 year sentence even though the court felt such a sentence to be unjust and excessive. The court said:

> I have no leeway. You may look to the court for justice, for mercy. We don't do that anymore. We are here just to read what the act says, and to impose it. And it is with great reluctance that I'm going to enter sentence against you because, while I think your offenses were very serious offenses, it does not serve society's

> interest, in my view, to incarcerate you for 15 years for those two . . . offenses under the facts as I understand them.

App. at 80a.

However, Kellum claims that the district court did have leeway. He contends that the district court erred by imposing the minimum mandatory sentence because it was unaware that it had the authority under 18 U.S.C. § 3553(a) to impose a sentence below the statutory minimum if it believed that the statutory minimum was greater than necessary to achieve the four goals of sentencing.[2] In making this argument he focuses on § 3553(a)(2), which provides:

> **(a) Factors to be considered in imposing a sentence.** — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —
>
> *******
>
> (2) the need for the sentence imposed —
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). In his view, this plain language establishes an upper limit on a district court's sentencing authority and unambiguously prevents a district court from

---

2. Because Kellum did not object at his sentencing to the district court's sentence, it is reviewed for plain error. *United States v. Couch*, 291 F.3d 251, 252-53 (3d Cir.), *cert. denied*, 537 U.S. 1038 (2002).

imposing a sentence that is so excessive that it exceeds the purposes of sentencing. Put another way, Kellum argues that by using the imperative "shall," Congress explicitly precluded district courts from imposing sentences that plainly exceeded that which is necessary to fulfill the four delineated purposes of sentencing. We disagree.

Kellum has produced no authority for this position. Furthermore, Kellum's argument is based upon an extraction of only those portions of § 3553(a) that favor his argument. However, § 3553(a) sets forth a number of other factors that a sentencing court must consider when sentencing. It provides:

> **a) Factors to be considered in imposing a sentence.** —The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for—
>
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

**(I)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement—

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). In addition, Section 3553(b) states that the district court must sentence the defendant within the sentencing guideline range unless the court finds an aggravating or mitigating circumstance not taken into account by the Sentencing Commission. 18 U.S.C.

§ 3553(b). Therefore, the considerations in § 3553(a)(2) are not the only factors that a district court must consider when imposing a sentence.

Furthermore, the statutory sentencing provisions do not begin with § 3553. Rather, they begin with § 3551, and subsection (a) thereof begins the chapter concerning sentencing as follows:

> *Except as otherwise specifically provided*, a defendant who has been found guilty of an offense described in any Federal statute, including sections 13 and 1153 of this title, other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, shall be sentenced with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551(a) (emphasis added). Thus, a district court must refer to the purposes outlined in § 3553(a)(2), "except as otherwise specifically provided." However, the mandatory minimum sentences Kellum was exposed to pursuant to 18 U.S.C. § 924(c)[3] and 21 U.S.C. § 841(b)(1)(A)[4] clearly fit within the "except as otherwise specifically provided" exclusion of § 3551(a).

Moreover, it is clear that Congress intended that mandatory minimum sentences are not to be affected by the general considerations of § 3553(a)(2) because that statute provides the authority for the district court to depart below the statutorily mandated minimum sentence. Subsection (e) allows "a sentence below a level established by statute as a minimum sentence" only upon a

---

3. A person convicted of carrying a gun in relation to a drug trafficking crime "shall, in addition to the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years."

4. "In the case of a violation of subsection (a) of this section involving (iii) 50 grams or more of a mixture or substance . . . which contains cocaine base . . . such person shall be sentenced to a term of imprisonment which may not be less that 10 years or more than life."

government motion for substantial assistance and subsection (f) allows a sentence "without regard to any statutory minimum sentence" if the "safety valve" factors are established. 18 U.S.C. §§ 3553(e), (f). These two narrow exceptions are the only authority a district court has to depart below a mandatory minimum sentence, and neither circumstance is present here.[5] *United States v. Santiago*, 201 F.3d 185, 187 (3d Cir. 1999) ("Any deviation from the statutory minimum sentence can only be had through the specific procedures established through 18 U.S.C. §§ 3553(e), 3553(f). . . ."); *United States v. Villar*, 184 F.3d 801, 803 (8th Cir. 1999). *See also United States v. Melendez*, 55 F.3d 130, 135 (3d Cir. 1995) ("[A] motion under U.S.S.G. § 5K1.1 unaccompanied by a motion under 18 U.S.C. § 3553(e) does not authorize a sentencing court to impose a sentence lower than a statutory minimum.").

Accordingly, it is now clear that § 3553(a) did not give the district court the authority to sentence Kellum below the statutorily mandated minimum sentence here. Therefore, we will affirm the judgment of conviction and sentence.[6]

---

5. The district court clearly understood this. Indeed, we do not doubt that it was the district court's understanding of the extreme limits on sentencing discretion that caused the court to observe that it must mechanically impose a sentence whether or not it considered the sentence to be just.

6. Although we must affirm the judgment of sentence, we agree with the concerns the sentencing court expressed in imposing a sentence that it believed to be so extreme and harsh as to be unjust.

Such expressions are not new, and the sentencing court here was not alone in expressing these concerns. Such concerns have been expressed by scholars and courts alike for well over a decade. *See*, Michael Tonry, *Mandatory Minimum Penalties and the U.S. Sentencing Commission's Mandatory Guidelines*, 4 Fed. Sent. R. 129 (1991).

The respected sentencing judge here had decades of experience overseeing criminal prosecutions and imposing sentences. That very valuable experience and the wisdom and context it might have otherwise afforded the choice of an appropriate punishment was negated by the spreadsheet calculus that has now displaced thoughtful and

10

A True Copy:
          Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

individualized sentencing. The court was therefore forced to mechanically apply a retributive sentencing scheme that has been widely criticized and which is driven by considerations of incapacitation rather than a policy of focused, and individualized sentencing.

We can only hope that the concerns expressed by such experienced jurists are heeded by the Sentencing Commission and Congress as they reassess the policies underlying the current sentencing guidelines.