NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 13-3477 and 13-4449
_____

UNITED STATES OF AMERICA

v.

MARK MILLER, a/k/a Sharkey

Mark Miller,

Appellant at No. 13-3477
_____

UNITED STATES OF AMERICA

v.

JAQUEL CREWS, a/k/a Quelly

Jaquel Crews,

Appellant at No. 13-4449
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Nos. 2-10-cr-00663-006 and 2-10-cr-00663-004)
District Judge:  Honorable John R. Padova


Submitted Under Third Circuit LAR 34.1(a)
September 9, 2015

BEFORE:  VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

(Filed:  April 1, 2016)
_____

OPINION[*]
_____

NYGAARD, *Circuit Judge.*

*Introduction*

Appellants Mark Miller and Jaquel Crews were convicted by a federal jury for their participation in a multimillion dollar drug organization that distributed hundreds of kilograms of cocaine and crack cocaine in Philadelphia's Frankfort neighborhood for more than 20 years.  They have appealed their convictions and sentences.  We will affirm.

*Background*

Because we write solely for the parties, we will provide only a brief outline of the factual background.  Miller and Crews were veterans of the illegal drug trade.  Testimony revealed that Miller had been selling cocaine at least since 1986, while Crews had been supplying drug dealers since 1996.  Together, the Appellants laundered millions of dollars in drug proceeds through the purchase of real estate and other assets.  Although neither Appellant was gainfully employed, they lived extravagantly, attending events like the Super Bowl and the MTV Video Music Award show.  They also laundered drug proceeds through the purchase of luxury items like mink coats, Breitling watches, and

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

more than $100,000 in diamond jewelry. Both Miller and Crews routinely delivered money to a California-based cocaine supplier, flying between Philadelphia and Los Angeles and Philadelphia and Las Vegas on numerous occasions. The supplier, in turn, would provide Crews and other members of the conspiracy with cocaine.[1]

After a ten-day trial, a jury convicted Crews and Miller of one count of conspiracy to distribute five kilograms or more of cocaine and fifty grams or more of crack cocaine between 1986 and November of 2007, in violation of 21 U.S.C. § 846. Miller was also convicted of seven counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1956(a)(1)(B)(i). Crews was found guilty of ten counts of money laundering in violation of the same aforementioned statutes. The Government filed forfeiture motions, seeking personal forfeiture money judgments against both Appellants in the amount of $5,000,000, pursuant to 21 U.S.C. § 853, which the District Court granted. At sentencing, the District Court imposed a 212-month prison sentence on Miller while Crews received a sentence of 240 months' imprisonment.

We granted Miller's motion to consolidate his appeal with Crews.' Together, and in some instances individually, they raise numerous challenges to their convictions, sentences, and the District Court's forfeiture order. We will discuss each issue in turn, beginning with the evidentiary claims.

*Exclusion of the Lofton Recordings*

At trial, Crews and Miller attempted to introduce excerpts of telephone calls a Government witness, Craig Lofton, made from prison to various individuals on the

---

[1] App. 780-81a.

3

outside. One of several witnesses called by the Government, Lofton testified to his knowledge and participation in Miller and Crews' drug trafficking schemes. The Appellants argued to the District Court that these excerpts would impeach Lofton by revealing incentives he had to lie on behalf of the Government. The District Court permitted Miller to use eight of the requested twelve excerpts. On appeal, Miller and Crews argue that the District Court abused its discretion by excluding the four remaining excerpted conversations from evidence.[2]

At the outset, we reject the Appellants' overarching contention that the District Court failed to articulate a legal basis for excluding these four excerpts from evidence. The record clearly reveals the foundation for the District Court's ruling: Federal Rule of Evidence 608.[3] Under this rule, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."[4] The District Court ruled these four excerpts to be extrinsic evidence and it did not abuse its discretion in doing so.

For example, the excerpt taken from a telephone conversation between Lofton and an unidentified woman during which Lofton discussed his belief that he and Crews were

---

[2] We review the District Court's ruling as to the admissibility of evidence and its limitation on cross-examination for an abuse of discretion. *United States v. Knight*, 700 F.3d 59, 62 (3d Cir. 2012); *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005).

[3] The District Court asked counsel for Appellant Crews: "So that these conversations are conversations that were made outside the courtroom. They were made – they involve Mr. Lofton and other people, and the defendant Crews wants to use these conversations for impeachment – for credibility purposes under Rule 608(b), is that a fair statement?" Counsel for Crews responded "Fair enough." App. at 1445a.

[4] Fed. R. Evid. 608(b).

coming "home in two years,"[5] is extrinsic because Lofton testified three years after making that statement. By that time, he could no longer have had the expectation he was going to be released in two years since three had already passed. Crews now argues that this excerpt should have been admitted nonetheless because it was contrary to Lofton's testimony that he had not been given any promises or sentencing expectations by the Government. This argument misses the important point that, at trial, Lofton was questioned about his then-current sentencing expectations; not the expectations he had in 2009 when this telephone conversation was recorded. Miller attacks this exclusion from a somewhat different angle, arguing it was admissible to prove Lofton expected to serve two years, not twenty-five. But, this excerpt is irrelevant to Miller's argument. As we just noted, by the time he testified at trial, Lofton's purported expectation of a two year sentence was already outmoded by a year, rendering his prior conversation about that expectation irrelevant. Therefore, the District Court did not abuse its broad discretion in evidentiary matters by ruling this excerpt out of bounds.

Likewise, the District Court did not abuse its discretion by excluding excerpts from a telephone conversation in which Lofton speaks of being suicidal. Here, Lofton was talking with another Government witness, Michael Durrant, in March of 2009. Lofton told Durrant that a ten-year sentence was "a long time," and that "[a]nything underneath it, I'm extremely underneath that over it. I'm upset. I'm tore down. Suicide

---

[5] App. at 1666a.

5

material."[6] The District Court found this particular excerpt to be extrinsic evidence of Lofton's motivation for testifying, and we agree. Lofton had already testified that he did not have an expectation of a reduced sentence in exchange for his cooperation with the Government.[7] On appeal, Miller maintains that this excerpt was evidence of Lofton's bias and that the District Court erred by preventing him from challenging Lofton. We see nothing in the record that supports his argument. Crews and Miller were unencumbered in their cross-examination of Lofton and questioned him in detail about his plea agreement and the possible sentence Lofton may have received had he not pleaded guilty. Further, Crews and Miller could certainly have recalled Lofton to question him about the other admitted excerpts, but elected not to do so. Therefore, we see no abuse of discretion in the exclusion of this excerpt from evidence.

Lastly, Miller and Crews argue that two excerpts from a conversation Lofton had with an agent from the Drug Enforcement Agency should have been admitted into evidence. These excerpts are part of a conversation between Lofton and a DEA agent concerning plans to take Lofton to meet with Government lawyers prior to his grand jury testimony. In the first excerpt, after clarifying where Lofton was being held, the agent inquired whether Lofton would like "a nice sit down dinner" when they picked him up.[8]

---

[6] App. at 1668a.

[7] App. at 1455a.

[8] App. at 1668a.

6

Lofton thought that would be "lovely."[9]  In the second excerpt, Lofton tells the agent "Yeah man, its three people that pretty much gonna walk through this thing.  You know what I mean.  You know them all.  I can't call em out, but you know who they are.  One of 'em already walked through the water look the devil in the face.  An he's up on the west side.  Everybody can't get a break but I make sure I protected them."[10]  At trial, counsel for Miller and Crews tried to admit these excerpted conversations as evidence of Lofton's inconsistent statements but acknowledged that Lofton had never been questioned about these statements.[11]  The District Court sustained the Government's objection to the admission of this excerpt.[12]

Now on appeal, both Appellants maintain that the first conversation should have been admitted as evidence of bias.  Miller believes that this exclusion prevented him "from showing . . . that Lofton received special treatment from the investigating agents."[13]  This basis for admission, however, was never argued to the District Court and, as such, is waived.[14]  And, even were it not, the record does not support this claim because Lofton was never questioned by the defense about the invitation to dinner, nor did the defense call the DEA Agent to be questioned about his offer.  Likewise, it was not

---

[9] *Id*.

[10] App. at 1667a.

[11] App. at 1454a.

[12] App. at 1454a, 1466a.

[13] Miller Br. at 26.

[14] *United States v. Burnett*, 773 F.3d 122, 130 (3d Cir. 2014).

an abuse of discretion for the District Court to exclude the second excerpt. Nothing in that exchange was inconsistent with Lofton's prior testimony and the excerpt makes no mention of coordination with other witnesses or any other type of conversation.

In sum, it was not an abuse of discretion for the District Court to exclude the forgoing excerpts from Lofton's recorded telephone conversations.

*Crews' Mandatory Minimum Sentence*

Next, Crews individually challenges his sentence, specifically the imposition of a statutorily mandated minimum term. Prior to sentencing, the Government filed for a downward variance from the advisory guidelines range on account of assistance Crews provided in another prosecution. The Government declined to file, however, a motion permitting a sentence below the statutory mandatory minimum of 240 months. Crews offered several objections to his proposed sentence, including an objection based on a perceived *Alleyne* error as well as an objection to an enhancement for his leadership role in the offense. The District Court granted Crews a downward variance, rejected his other challenges, and imposed the mandatory minimum sentence permitted by the statute—240 months. On appeal, Crews again attacks the propriety of his sentence. We start with his claim of *Alleyne* error.

After the verdict was handed down, but before Crews was sentenced, the Supreme Court announced its decision in *Alleyne v. United States*.[15] In *Alleyne*, the Supreme

---

[15]133 S.Ct. 2151 (2013). The jury verdict was announced on March 14, 2012. The Supreme Court handed down its opinion in the *Alleyne* case on June 17, 2013, and Crews was sentenced on November 5, 2013.

Court held that any fact that increases the mandatory minimum sentence is an element which must be determined by the jury.[16] Therefore, where a factual determination such as a drug quantity "trigger[s] a statutory mandatory minimum sentence, [it] must . . . be submitted to a jury."[17] Crews was charged, at Count Five of the indictment, with responsibility for distributing "five kilograms or more, that is hundreds of kilograms, of mixture and substance containing a detectable amount of cocaine, and 50 grams or more, that is multiple kilograms, of a mixture and substance containing a detectable amount of cocaine base ("crack")."[18] Concerning Count Five, the District Court instructed the jury that, to find Crews guilty, it must "be satisfied that the Government proved the weight or quantity beyond a reasonable doubt."[19] Further, the District Court noted that the jury had received "evidence during the course of this trial as to how much—what the weight was with respect to what was recovered and what was involved."[20] The jury was also specifically told that it must "determine the weight of the cocaine and cocaine base crack which was involved in the conspiracy," and that "in making this decision, you should consider all the controlled substances that the members of the conspiracy actually distributed."[21] Finally, the District Court told the jury that they must "unanimously find

---

[16] *Id*. at 2155, 2163.

[17] *United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014) (interpreting *Alleyne*).

[18] App. at 111a. These were alleged violations of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

[19] App. at 1504a.

[20] App. at 1505a.

[21] App. at 1505a.

beyond a reasonable doubt that the weight or quantity of cocaine that was involved in the conspiracy was five kilograms or more."[22]  In finding Crews guilty of conspiracy, the jury unanimously determined that the conspiracy involved five or more kilograms of cocaine and 280 grams or more of cocaine base.[23]  But, as Crews submits, and the Government concedes, the jury did not determine an exact amount of cocaine and cocaine base directly attributable to Crews himself.  This lack of an individualized determination, the parties maintain, was error in light of *Alleyne*.  We agree.  However, such a lapse was harmless.

Alleyne errors can certainly be reviewed for harmlessness.  Recently, in *United States v. Lewis*,[24] we applied a harmless error analysis to an *Alleyne* error, noting that, while the Supreme Court had not discussed such a review in *Alleyne*, the Court has ". . . adopted the general rule that a constitutional error does not automatically require reversal

---

[22] App. at 1505a.  Similar instructions were given to the jury on the amount of cocaine base they needed to find (280 grams).  *See* App. at 1506a.

[23] App. at 1652a.  We note that after Crews and Miller were indicted, the Fair Sentencing Act of 2010 (FSA) was enacted.  It increased the amount of crack cocaine that triggers the ten-year mandatory minimum sentence from 50 grams to 280 grams.  On June 21, 2012, the United States Supreme Court held that the more lenient penalties of the FSA apply to those offenders whose crimes occurred before the effective date of the Act (August 3, 2010), but who were sentenced after that date.  *See Dorsey v. United States*, 132 S.Ct. 2321, 2335 (2012).  Here, the offenses being prosecuted occurred well before August of 2010 and the Appellees were sentenced well after that date.  Therefore, while the indictment charged them only with conspiracy to distribute 50 grams of crack cocaine, the District Court correctly instructed the jury that it had to find the conspiracy involved 280 grams of crack cocaine.

[24] 802 F.3d 449 (3d Cir. 2015).

of a conviction," and that the Supreme Court has "applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless."[25]  *Lewis* provides an important template for our analysis in this case.  As a prerequisite, *Lewis* instructs that harmless error review may only be undertaken "when the defendant has made a timely objection to an error."[26]  That was done here.  Crews' objections to his sentence contained specific reference and argument to *Alleyne*, sufficient to satisfy this requirement.[27]  *Lewis* additionally reminds us that the Government has a heavy burden "to demonstrate that reversal is not warranted."[28]  And lastly, *Lewis* notes the important distinction between trial errors and sentencing errors.[29]

Both types of errors are subject to harmless-error review, though our standard of review differs markedly for each one.  "Harmless-error review for a sentencing error turns on whether the error did or did not 'contribute to the [sentence] obtained.'"[30]  By contrast, harmless-error review for a trial error "turns on whether it is 'clear beyond a

---

[25] 802 F.3d at 454 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)).

[26] *Id.* (quoting *United States v. Adams*, 252 F.3d 276, 281 (3d Cir. 2001)).

[27] *See, e.g.*, App. at 1807a, 1874a.

[28] *Lewis*, 802 F.3d at 454 (quoting *United States v. Waller*, 654 F.3d 430, 438 (3d Cir. 2011)).

[29] *Id.* 455 (citing *United States v. Brennan*, 326 F.3d 176, 180 (3d Cir. 2003)).

[30] *Id.* at 456.

reasonable doubt that a rational jury would have found the defendant guilty absent the error.'"[31]

In *Lewis*, we categorized the *Alleyne* error as "a pure sentencing error."[32] There, Lewis's indictment charged him with the offense of using or carrying a firearm during and in relation to a crime of violence. And at trial, the jury was properly instructed for that offense and found him guilty. Yet the District Court sentenced him for brandishing a firearm during a crime of violence, which is a "'separate, aggravated offense that must be found by a jury.'"[33] We held that this was a "pure sentencing error," as the jury was properly instructed at trial as to each element of the crime for which Lewis was indicted and found him guilty of that crime, but then the District Court sentenced him for a crime for which he was neither indicted nor tried. As a result, applying harmless-error review, we considered whether the *Alleyne* error contributed to Lewis's sentence, concluded that it did, and vacated the sentence and remanded.

Importantly, we also recognized in *Lewis* that "not . . . all *Alleyne* or *Apprendi* errors are pure sentencing errors."[34] For example, in *United States v. Vasquez,*[35] we were confronted with "both a trial error and a resulting sentencing error."[36] There, Vasquez

---

[31] *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

[32] *Id.* at 455.

[33] *Id.* at 454 (quoting *Alleyne v. United States*, 133 S. Ct. 2151, 2162 (2013)).

[34] *Id.* at 455.
[35] 271 F.3d 93 (3d Cir. 2001).

[36] *Id.*

was indicted and tried for conspiring to possess and distribute more than five kilograms of cocaine. But the District Court never properly instructed the jury at trial on drug quantity, which was an element of the offense for which he was indicted and tried. As a result, Vasquez's prescribed statutory maximum was 240 months, but the District Court, in violation of *Apprendi*, sentenced him to 288 months after finding at sentencing that he had possessed a certain quantity of drugs. So, even though the District Court erred at sentencing, that error was caused by a trial error—i.e., its failure to submit to the jury an element of the offense for which he was indicted and tried. And because this trial error was "comparable to the errors in both *Neder* [*v. United States*, 527 U.S. 1 (1999)], and *Johnson* [*v. United States*, 520 U.S. 461 (1997)]," we considered whether the evidence at trial established beyond a reasonable doubt that Vasquez had possessed the quantity of drugs found by the District Court and held that it did.[37] In other words, we were "confident that Vazquez's sentence would have been the same had the jury made the drug quantity finding."[38]

The error in this case is akin to the trial error in *Vasquez* rather than the pure sentencing error in *Lewis*. Like Vasquez's indictment, Crews' indictment charged him with conspiring to possess and distribute five or more kilograms of cocaine. Yet the District Court never properly instructed the jury at trial that they had to determine the quantity of drugs specifically attributable to Crews and instead instructed it to determine the quantity of drugs attributable to the conspiracy as a whole. Then, at sentencing, the

---

[37] *Id.* at 102.

[38] *Id*. at 104.

District Court, in violation of *Alleyne*, sentenced Crews to 240 months, which was the mandatory minimum for an offense involving five or more kilograms of cocaine. Accordingly, because the District Court's *Alleyne* error was caused by a trial error, we can look to the trial record and conclude that the error was harmless because of the overwhelming evidence in support of the drug quantity.

For example, Crews supplied Vincent Graham with 4.5 to 9 ounce quantities of cocaine every five to seven days throughout 2003.[39] And, evidence also established that Crews supplied Graham with 4.5 to 13 ounces of cocaine every five to seven days between May, 2005 and May, 2006.[40] The trial record also reveals that Michael Durant sold Crews 20 to 25 kilograms of cocaine between 2004 and 2005.[41] Before that, Emmanuel Moore supplied Crews with approximately 25 kilograms of cocaine between the fall of 2002 and early 2003.[42] Evidence also established that Moore traveled to California two times per week between May 2003 and October 2004 and purchased "no less than 5" kilograms of cocaine per week for Crews.[43] Indeed, Crews admits in his brief that "[i]n 2004, Moore purchased at least 20 kilos of cocaine on each trip to California; Crews would receive between five and eight of the kilos."[44] And, the record

---

[39] App. at 909a-15a.

[40] App. at 916a-17a.

[41] App. at 634a-38a.

[42] App. at 983a-84a, 988a-93a.

[43] App. at 998a-1003a.

[44] Crews Br. at 5 (citing App. at 1011a).

14

also establishes Crews received 20 kilograms of cocaine from a source Lofton had in North Carolina.[45] Given all of this, including Crews' admission on appeal, we have little difficulty concluding that the trial record contained overwhelming evidence of drug quantity attributable to Crews. Therefore, we also have little difficulty concluding the District Court's *Alleyne* error was harmless.

Crews next argues that the post-conviction assistance he gave the Government in other investigations required the Government to file a motion pursuant to 18 U.S.C. § 3553(e).[46] This argument is meritless as well.

At sentencing, the Government filed a motion for a downward variance from the applicable Guideline range pursuant to U.S.S.G. § 5K1.1, based on Crews' post-conviction cooperation, but elected not to file a motion pursuant to 18 U.S.C. § 3553(e), which would have permitted the District Court to sentence Crews below the mandatory minimum sentence of 20 years. Crews first attempts to connect this refusal to file a § 3553(e) motion to the Government's filing of a motion under §5K1.1.[47] He tells us that, because these provisions operate under the "same principles," the District Court mistakenly concluded that it lacked the authority to depart below the mandatory minimum sentence, the absence of a §3553(e) motion notwithstanding. Crews is

---

[45] App. at 727a.

[46] 18 U.S.C. § 3553(e) provides: "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

[47] Crews Br. at 27.

15

incorrect.  The Supreme Court has rejected the notion that § 5K1.1 and § 3553(e) somehow connect to form a unitary downward departure system whereby a § 5K1.1 motion authorizes a district court to sentence below the mandatory minimum under § 3553(e).[48]

Crews could possibly have received a sentence below the statutory minimum if the Government filed a motion pursuant to 18 U.S.C. § 3553(e).[49]  It did not do so here and stated its reasons to the District Court in detail at the sentencing hearing.[50]  This makes the Government's decision unreviewable unless the parties agreed that the Government would file such a motion and then did not do so, or that the Government's reasons for not filing the motion were based on an unconstitutional motive, like a defendant's race or religion.[51]  Crews had no agreement with the Government which would have required the filing of such a motion.  So, Crews is left to argue that the reasons provided by the

---

[48] *Melendez v. United States*, 518 U.S. 120 (1996).

[49] *See United States v. Kellum*, 356 F.3d 285, 289 (3d Cir. 2004) (holding that a district court only has authority to depart below mandatory minimum sentence pursuant to 18 U.S.C. § 3553(e), (f)); *Melendez v. United States*, 518 U.S. 120, 130 (1996) (a district court has no authority to impose a sentence below a statutory mandatory minimum when the government has not made a motion pursuant to § 3553(e)).  There are two other avenues whereby a district court might impose a sentence less than the statutory mandatory minimum—Federal Rule of Criminal Procedure 35(b) and the safety value set out in 18 U.S.C. § 3553(f)(7)—which are inapplicable here.

[50] App. at 1876a-1882a.

[51] *See Wade v. United States*, 504 U.S. 181, 185-86 (1992).

16

Government for not filing the § 3553(e) motion are "not rationally related to any legitimate Government end."[52] He bears the burden on this point and has not met it.[53]

The Government set out numerous reasons in support of its decision not to file a § 3553(e) motion: the extent and breadth of Crews' drug trafficking and money laundering activities, the decades-long duration of the conspiracy, Crews' leadership role, the massive amounts of drugs put onto the streets of Philadelphia through Crews' actions, the large number of individuals involved in Crews' activities, Crews' continuation of drug trafficking activities despite his conviction and supervised release for the same activities in 1995, the timing of his cooperation with the Government—which he gave only after being convicted—his post-conviction offer of information on the criminal activities of witnesses who testified against him, Crews' failure to accept responsibility for his crimes, the sentences imposed on his co-defendants and the level of departure granted to witnesses who cooperated, and the level of intimidation those witnesses faced as a result of their trial testimony against Crews.[54] The District Court found no arbitrariness among these reasons nor do we. Crews maintains that several of the Government's reasons were indeed arbitrary, yet he offers us very few specifics or support for his contentions. Mere claims that Crews provided substantial assistance and generalized allegations of the Government's improper motive do not "entitle a defendant to a remedy . . .."[55]

---

[52] *Id*.

[53] *Id*. at 186.

[54] App. at 1879a-1883a.

[55] *Wade*, 504 U.S. at 186.

17

He argues, for example, that some defendants "more deeply involved in the same conspiracy as Crews testified at trial and received lesser sentences."[56] But, Crews' scant paragraph of conclusory argument on this point lacks supporting facts from which a viable claim of arbitrariness can spring. Additionally, Crews suggests that the Government's decision not to file the § 3553(e) motion amounted to an impermissible attempt by the Government to control the exercise of judicial authority.[57] This is a separation of powers argument. He characterizes the Government's concern with avoiding sentencing disparities as representative of a "[d]isagreement with and distrust of judicial authority."[58] However, Crews ignores the fact that a statute—§ 3553(e)—gives the Government authority to make the decision whether to file the motion and that this statutory mandate is not a usurpation of judicial power. We have noted that, "[w]hen Congress establishes a minimum sentence for a particular crime, district courts are required to sentence defendants guilty of that crime to a term of imprisonment no less than the Congressionally prescribed minimum, unless an explicit exception to the minimum sentence applies."[59] Indeed, the Supreme Court has "consistently recognized

---

[56] Crews Br. at 30.

[57] *Id.*

[58] *Id.*

[59] *United States v. Winebarger*, 664 F.3d 388, 392 (3d Cir. 2011).

18

that Congress has plenary authority over the designation of appropriate punishment for federal crimes."[60]

Lastly, Crews charges that the Government arbitrarily took the timing of his cooperation into account when deciding not to file the § 3553(e) motion. He argues, more specifically, that he was penalized for exercising his right to trial. That did not happen here. At sentencing the Government acknowledged distinctions between Crews and his co-defendants, recognizing that the co-defendants who pleaded guilty and offered meaningful assistance to the Government received lesser sentences.[61] Further, the Government acknowledged that Crews had the right to proceed to trial and that the Government was not penalizing him for exercising that right.[62] There is no evidence, however, of unconstitutional conduct by the Government. Instead, the Government made the decision not to file the § 3553(e) motion after weighing the quantity and quality of Crews' assistance; assistance it did not find substantial enough to warrant the filing of the motion. For example, while Crews did provide information on unsolved murders allegedly committed by his co-conspirators, the information was decades old and, as the Government noted, it does not typically prosecute murder cases.[63] Crews also gave the Government information concerning a cell phone that another co-conspirator used,

---

[60] *United States v. Frank*, 864 F.2d 992, 1010 (3d Cir. 1988) (citing *United States v. Grayson*, 438 U.S. 41 (1978).

[61] *See* App. at 1879a.

[62] *Id*.

[63] *Id.*

19

information that the Government acknowledged as useful during the penalty phase of that co-conspirator's trial.[64] However, since Crews was by then a convicted felon, thereby diminishing the reliability of his testimony in the eyes of a jury, the Government elected not to call him to testify in that case. The foregoing reasons do not reflect a motivation to punish Crews for exercising his right to a trial. Instead, they reflect the Government's rational consideration of the value of Crews' assistance as compared to that offered by other conspirators. We agree, therefore, with the District Court that the Government did not act arbitrarily in declining to file a § 3553(e) motion.

Crews next argues that § 841(b)(1)(A)'s mandatory minimum sentence "conflicts" with the parsimony provision of 18 U.S.C. § 3553(a), which provides that a district court "shall impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing.[65] Specifically, Crews maintains that the District Court was unable to carry out its judicial function, as set forth in the mandates of 18 U.S.C. § 3553(a), because it had to comply with the mandatory 20 year sentence. We have previously rejected such challenges to mandatory minimum sentences.[66] These decisions are

---

[64] *Id.*

[65] 18 U.S.C. § 3553(a).

[66] *See United States v. Grober,* 624 F.3d 592 (3d Cir. 2010); *United States v. Walker*, 473 F.3d 71, 85 (3d Cir. 2007) (holding that there is no conflict between § 3553 and a mandatory minimum sentence provision because " § 3553(a) must be read in conjunction with § 3553(e), which prohibits the court from sentencing a defendant below the statutory mandatory minimum sentence unless the Government files a motion permitting such departure"); *United States v. MacEwan*, 445 F.3d 237, 251–52 (3d Cir. 2006) ("Congress has the power to define criminal punishments without giving the courts any sentencing discretion." (quoting *Chapman v. United States*, 500 U.S. 453, 467 (1991)).

20

binding precedent, and consequently resolve Crews' argument in favor of the Government. Therefore, we need not discuss this particular issue in any greater detail.

We likewise need not discuss Crews' next issue in any great depth. Crews challenges the enhancement of his sentence due to his prior criminal conviction. Title 21 U.S.C. § 841(b)(1)(A) contains a proviso whereby a mandatory minimum sentence can be doubled because of a prior criminal conviction. Crews argues that the existence of his prior conviction was an element of his offense and, as such, had to be alleged in the indictment and proven to the jury beyond a reasonable doubt. This argument has been rejected.[67] The District Court was thus fully empowered to make the necessary findings to double Crews' mandatory minimum sentence based on a prior conviction.

Lastly on the question of his sentence, Crews attacks the information filed by the Government pursuant to 21 U.S.C. § 851, which doubled Crews' mandatory minimum sentence. Specifically, he claims the notice he received of this enhancement was deficient. We disagree. Section 851 provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon....[68]

---

[67] *Almendarez–Torres v. United States*, 523 U.S. 224, 246–47 (1998) (prior conviction that increases maximum penalty need not be treated as element of offense and proven to a jury); *United States v. Blair*, 734 F.3d 218, 227 (3d Cir. 2013) ("*Alleyne* do[es] nothing to restrict the established exception under *Almendarez–Torres* that allows judges to consider prior convictions.").

[68] 21 U.S.C. § 851(a)(1).

We review the sufficiency of the Government's notice de novo and agree with the District Court that Crews was provided with sufficient notice of the Government's intention to rely on his prior felony conviction to enhance his sentence.[69]

The Government's information stated the following:

> On or about February 21, 1996, defendant Jaquel Crews was sentenced in the United States District Court for the Eastern District of Pennsylvania on his guilty plea to the felony drug offenses of conspiracy to distribute cocaine and distribution of cocaine base, at Criminal Number 95-0391, to a term of 56 months, and 4 year supervised release. Jaquel Crews is charged in the Second Superseding Indictment, Criminal No. 10-663-2, with, in Count Five, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Jaquel Crews' prior felony drug conviction serves as the basis for increased punishment pursuant to 21 U.S.C. § 841(B)(1)(b).[70]

Crews asserts that this notice was faulty because it omits the date his prior trafficking conviction became final and did not specifically mention that this conviction became final before the offense dates in the instant prosecution. We have never required such specificity, however. Instead, all that is required is that the § 851 notice provide a defendant with reasonable notice of the Government's intention to rely on a previous conviction and an opportunity to be heard on the issue.[71] The notice in this case satisfies these basic requirements.

---

[69] *United States v. Weaver*, 267 F.3d 231, 246 (3d Cir. 2001).

[70] App. at 1671a-72a.

[71] *See Weaver*, 267 F.3d at 247.

22

In sum, we see no error in the application of the mandatory minimum sentence to Appellant Crews.

*Enhancement for Leadership Role*

Crews complains that the District Court incorrectly determined that he was a leader of the drug conspiracy and, therefore, erroneously enhanced his sentence by four levels.[72] We review a district court's ruling on a sentencing enhancement that requires a predominately factual inquiry for clear error.[73] The leadership enhancement is such an inquiry and it is appropriately activated if the evidence shows that Crews exercised some degree of control over at least one other person involved in the offense.[74] We find no clear error in the District Court's determination that Crews bore a leadership or organizational role in the offense. The evidence established, for example, that Crews supervised Donielle Fletcher in the production, packaging, storage, and delivery of cocaine from her residence.[75] Further, evidence also established that Crews directed Craig Lofton and others to purchase large amounts of cocaine on buying trips to California. Crews paid for these trips from his own funds and answered to no one for these excursions.[76] As the District Court aptly summarized, "[t]hose deals were his

---

[72] *See* U.S.S.G. § 3B1.1(a).

[73] *United States v. Richards*, 674 F.3d 215, 221-22 (3d Cir. 2012).

[74] *United States v. Helbling*, 209 F.3d 226, 243-44 (3d Cir. 2010); *see also* U.S.S.G. § 3B1.1 app. note 2.

[75] App. at 262a-269a.

[76] *See* App. 1859a-69a.

deals."[77]  Accordingly, the District Court did not clearly err in determining that the four-level leadership enhancement applied.

*Issues Related to the Forfeiture Determination*

Both Miller and Crews challenge the forfeiture judgments entered against them, raising different points of attack.[78]  The Government sought forfeiture pursuant to 21 U.S.C. §853, which limits forfeiture to "any property constituting, or derived from any proceeds the person obtained, directly or indirectly, as a result of such violation; or any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations."[79]  The standard of proof is preponderance of the evidence.[80]  The District Court granted the forfeiture motion in the amount of $5 million, and in doing so, indicated that its decision was supported by both a proceeds theory and a facilitating property theory of forfeiture.[81]

We will start with a challenge to the forfeiture raised by Appellant Miller.  Miller asserts that the District Court, as opposed to the jury, unconstitutionally made certain factual findings in ordering the forfeiture.  Our decision in *United States v. Leahy*, and the

---

[77] App. at 1867a.

[78] As these issues present questions of law, we exercise plenary review. *United States v. Vampire Nation*, 451 F.3d 189, 198 (3d Cir. 2006) (citing *United States v. Ledesma–Cuesta*, 347 F.3d 527, 530 (3d Cir. 2003)).

[79] 21 U.S.C. § 853(a)(1), (2).

[80] *United States v. Leahy*, 438 F.3d 328, 333 (3d Cir. 2006).

[81] App. at 11.

Supreme Court's decision in *Libretti v. United States* preclude Miller's argument.[82]

Those decisions clearly hold that the right to a jury is not implicated in criminal forfeiture

proceedings.[83]  In light of this controlling precedent, Miller's claim is untenable.[84]

For his part, Crews contends that the District Court lacked statutory authority to

impose a $5 million money judgment against him personally under 21 U.S.C. §

853(a)(1).  This argument likewise fails when confronted with our prior precedent.  In

*United States v. Vampire Nation*, we specifically held that "in personam forfeiture

judgments are appropriate under 21 U.S.C. § 853, even where the amount of the

judgment exceeds the defendant's available assets at the time of conviction."[85]  Crews

makes several attempts to distinguish our decision in *Vampire Nation* from his case, all of

which are unavailing.  For example, he believes *Vampire Nation* is inapplicable because

the forfeiture there was rooted in 18 U.S.C. § 981(a)(1)(C), a civil forfeiture provision

that was made enforceable in criminal prosecutions by 28 U.S.C. § 2461(c), whereas his

---

[82] 438 F.3d 328, 331 (3d Cir. 2006)(en banc); 516 U.S. 29, 48-49 (1995).

[83] *See, e.g., Libretti*, 516 U.S. at 49.

[84] The Appellants call our attention to the Supreme Court's decision in *Southern Union Co. v. United States*, 132 S.Ct. 2344 (2014), arguing that opinion casts serious doubt on the continued validity of *Libretti*.  In *Southern Union*, the Supreme Court applied *Apprendi* to the imposition of criminal fines, thereby requiring a jury determination before fines can be imposed.  The Appellants urge us to view *Libretti* as effectively overruled, and ask us to now require a jury determination in the context of criminal forfeitures, just as *Southern* Union required it for criminal fines.  This, we cannot do. *Libretti* has not been overruled, and we are obligated to follow its clear holding that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection."  516 U.S. at 49.

[85] 451 F.3d 189, 203 (3d Cir. 2006).

forfeiture was imposed directly under § 853. This argument is meritless. Our decision in *Vampire Nation* specifically addresses § 853 forfeitures.[86]

Next, Crews pivots and argues that *Vampire Nation* does not apply because that case concerned § 853's procedural provisions, while his forfeiture was premised on that section's substantive authority. Yet, Crews offers us no supporting authority to validate this distinction, nor does he attempt to explain the importance of such a difference. The Government, however, did find case law rejecting Crews' argument. The Court of Appeals for the Second Circuit looked at this issue and found "no meaningful difference" between an in personam forfeiture judgment arising directly from § 853, and an in personam forfeiture that might arise from § 853 by way of another statute, 28 U.S.C. § 2461(c), for example.[87] We agree. Lastly, Crews tries to get out from our holding in *Vampire Nation* by arguing that that opinion never addressed the point he advances here: in personam money judgments are not available under § 853. This is not the case. We did address this argument in *Vampire Nation,* specifically holding that "an in personam forfeiture judgment may be entered for the full amount of the criminal proceeds."[88] This holding precludes Crews' argument.

---

[86] *Id*. at 203.

[87] *United States v. Kalish*, 626 F.3d 165, 169 (2d Cir. 2010).

[88] 451 F.3d at 202-03.

To conclude, the Appellants' claims that in personam forfeiture money judgments are unavailable in the context of their drug trafficking sentences are erroneous. We find no error in the District Court's imposition of such a judgment.

As a parallel argument, Crews contends the District Court lacked the authority to enter an in personam money judgment against him based on a facilitating property theory. Here, he finds fault with the indictment. Pursuant to Federal Rule of Criminal Procedure Rule 32, "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the Government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute."[89] Crews argues that the forfeiture judgment was invalid because while the phrase "the sum of $5,000,000" was indicated in the proceeds section of the indictment, it was not repeated in the forfeiture property section.[90] This reading of the rule is too restrictive. Rule 32 and due process only require that notice of the possible forfeiture be given to a defendant and that a defendant have an opportunity to be heard.[91] An indictment is sufficiently specific as long as it "puts the defendant on notice that the government seeks forfeiture and identifies the assets with sufficient specificity to permit the defendant to marshal evidence in their defense."[92] Here, the indictment gave Crews

---

[89] Fed. R. Crim. P. 32.2(a).

[90] Appellant Miller joins in this argument.

[91] *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 48–50 (1993).

[92] *See, e.g., United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001).

27

ample notice that the Government intended to seek a $5 million forfeiture money judgment and the fact that this request was not repeated in separate sections of the indictment is not an error.

Crews also argues that the District Court erred by imposing joint and several liability based on the forfeited property. Here, we share the Government's belief that this argument is largely academic, given that joint and several liability was also imposed by the District Court based on the proceeds of the conspiracy, an action which our prior precedent clearly endorses.[93] Crews claims that the language of 21 U.S.C. § 853(a)(2) limits the scope of a forfeiture under the facilitating property theory to that property belonging only to him. We do not agree. Section 853(a)(2) permits the forfeiture of "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the crime. Crews keys-in on the words "any person" and "the person's" as language, he says, that limits the extent of the forfeiture to property that belongs solely to him. Crews neglects to mention, however, that the proceeds section of § 853 contains the same language and we have held that language to take in all the property possessed by any member of the conspiracy.[94] In *United States v. Pitts*, we noted that § 853(a)(1) "does not say that each conspirator shall forfeit only such property involved in the offense which is or has even been in that conspirator's possession.

---

[93] *See, e.g., United States v. Pitts*, 193 F.3d 751, 765 (3d Cir. 1999); *see also United States v. Van Nguyen*, 602 F.3d 886, 904 (8th Cir. 2010) (imposing joint and several liability with respect to forfeiture of proceeds of a drug conspiracy).

[94] 193 F.3d 751, 765 (3d Cir. 1999).

28

Rather, the statute recognizes that the amount of property involved in a . . . conspiracy cannot be different for different conspirators."[95] Given the identical language in § 853(a)(2), we see no reason not to apply this holding to that section. And, Crews has offered us none. We therefore see no error in the District Court's order of forfeiture.

Lastly, Appellant Miller argues that the District Court should have made a foreseeability determination before imposing joint and several forfeiture liability. He acknowledges, however, that he failed to "object on this basis below."[96] We, therefore, apply a plain error review to his claims.[97] Miller insists that we should apply plenary review to this claim nonetheless because he did not have an opportunity to object to the lack of a foreseeability finding.[98] Specifically, he says that he could not have known the District Court would impose joint and several liability on him without a foreseeability determination until the District Court issued its order and memorandum.[99] By that time, he maintains, it was too late for him to object. We disagree. Miller had plenty of time and opportunity to object. Indeed, almost a year would pass between the entry of the District Court's forfeiture order and Miller's sentencing.[100] Nothing prevented Miller

---

[95] *Id.*

[96] Miller Br. at 40.

[97] *United States v. Berger,* 689 F.3d 297, 299 (3d Cir. 2012).

[98] Miller Brief at 40.

[99] *Id*.

[100] The forfeiture order and accompanying memorandum were filed on August 14, 2012 and Miller was sentenced on July 24, 2013.

29

from filing an objection to the forfeiture based on a lack of foreseeability during that time. This is because a forfeiture order only becomes final at the time of sentencing.[101] Therefore, given this omission, we review Miller's claim for plain error.[102]

Under the plain error standard, we may reverse the District Court's ruling only if there was "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."[103] There was no error here, much less a plain one. We have held that a District Court may impose joint and several liability on co-defendants as part of a forfeiture money judgment.[104] And, while other courts may have done so, we have not held that a foreseeability finding is required prior to the imposition of joint and several liability on co-defendants. Therefore, we see no error. Even were we to find error, it certainly would not be plain, given that a foreseeability requirement is not uniformly required. Miller calls our attention to decisions from other circuits that have required a foreseeability finding—*United States v. Elder*,[105] for example. He also points out that we have issued a

---

[101] *See* Fed. R. Crim. P. 32.2(b)(1)(A); *United States v. Pelullo*, 178 F.3d 196, 202 (3d Cir. 1999).

[102] *See United States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006) (citing Fed.R.Crim.P. 30; *Gov't of the Virgin Islands v. Knight*, 989 F.2d 619, 631 (3d Cir. 1993)).

[103] *United States v. Paladino*, 769 F.3d 197, 201 (3d Cir. 2014).

[104] *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999).

[105] 682 F.3d 1065 (8th Cir. 2012).

non-precedential opinion requiring such a determination.[106]  However, courts are not harmonized in their view that a foreseeability requirement is necessary.  The Court of Appeals for the Eleventh Circuit, for example, has specifically rejected a foreseeability requirement, relying on Supreme Court precedent.[107]  And, our decision in *Plaskett*, as the parties recognize, was a non-precedential opinion issued under our I.O.P. 5.7, and as such lacks precedential authority and is non-binding on any subsequent case or panel.  Given these contrary opinions, we cannot say that the District Court's lack of a foreseeability determination was obvious error.[108]

*Conclusion*

In light of the foregoing, we will affirm the convictions of Appellants Crews and Miller, the sentence of Appellant Crews, and the forfeiture money judgments entered against both Appellants in the District Court.

---

[106] *United States v. Plaskett*, 355 F. App'x 639 (3d Cir. 2009).

[107] *See, e.g., United States v. Browne*, 505 F.3d 1229, 1279 (11th Cir. 2007).

[108] *United States v. Olano*, 507 U.S. 725, 733-35 (1993) ("To demonstrate "plain error," a defendant must prove that the Court erred, that the error was "clear" or "obvious," and that the error "affect[ed] substantial rights" of the defendant.).